FILED '09 MAR 12 12:23 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEONARD WESTON BYERS, JR.,

          Plaintiff,          Civil No. 07-1777-HO

          v.               ORDER

MIKE WHEELER, et al.,

          Defendants.

HOGAN, District Judge.

    Plaintiff, an inmate in the custody of the Oregon department of Corrections, filed a complaint under 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was a pre-trial detainee at the Lincoln County Jail (LCJ). Specifically, plaintiff alleges "excessive use of force and denial of grievance system, disrespect in violation of the

1 - ORDER

Eighth Amendment to the United States Constitution and confinement in segregation in violation of due process clause of the Fourteenth Amendment to the Constitution." Complaint (#2) p. 1. Plaintiff also alleges supplemental state tort claims for assault and battery and negligence. Plaintiff seeks money damages and declaratory and injunctive relief.[1]

Before the court are the parties cross-motions for summary judgment (#27) and (#35).

Background:    The facts giving rise to plaintiff's claims are as follows: On November 20, 2007, plaintiff attended an Alcoholic Anonymous meeting in the Lincoln County Jail Library. During the meeting defendant Wheeler observed plaintiff communicating with another inmate, Robert Williston. Defendant Wheeler alleges that after the meeting, while escorting the inmates back to their cells, he informed inmate

---

[1]Plaintiff's request for injunctive relief has to do with his security classification at the Lincoln County Jail. Because plaintiff is no longer incarcerated in the Lincoln County Jail, the request that he be released from "Max Security and placed in General Population or G-1 - With restoration of all rights and privileges," Complaint (#2) p. 6, is moot. See, Taylor v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986); Moore v. Thieret, 862 F.2d 148, 150 (7ht Cir. 1988); Magee v. Waters, 810 F.2d 451 452 (4th Cir. 1987); see also, Hood v. Crabtree 242 F.3d 381 (9th Cir. 2000). Moreover, plaintiff stated at his deposition that his inmate reclassification and loss of privileges is not part of this lawsuit. Declaration of Bruce Mowery (#29) Exhibit A, p. 11-12.

Robert Williston that he had been very disrespectful during the meeting and that "his actions were pathetic." Declaration of Mike Wheeler (#31) p. 2. Plaintiff alleges that defendant Wheeler "called plaintiff 'pathetic.'" Complaint (#2) p. 3.

Defendant Wheeler states that after plaintiff requested a "kyte" (standard inmate communication form) plaintiff "yelled obscenities at me all the while threatening me with injury and death." Declaration of Mike Wheeler (#31) p. 2. Defendant Wheeler further states that "(p)laintiff became increasingly agitated and refused several more direct orders to cell-in." Id. Plaintiff eventually entered his cell, but continued to ignore defendant Wheeler's orders and "continued making threats to injure (defendant Wheeler)." Defendant Wheeler eventually used his "tazer" to subdue plaintiff. Id. p. 3. Plaintiff was then escorted to "booking" by two "cover officers" who are not named as defendants in this action. Declaration of Mike Wheeler (#31) p. 3. Defendant Wheeler states that he had "no 'hands on' contact with plaintiff as he was escorted to the restraint chair in booking by the other officers." Id.

Plaintiff, describes the incident quite differently. Plaintiff alleges that he "repeatedly asked defendant Wheeler

3 - ORDER

for a grievance (form) for calling him names and disrespect;"
that he "went to his cell as directed;" and that "defendant
Wheeler came to plaintiff's cell while yelling at plaintiff
with his tazer gun out and aimed at plaintiff threatening and
provoking, instigating the situation." Complaint (#2) p. 3.
Plaintiff alleges that defendant Wheeler entered his closed
cell and "tazed (him), without provocation." Declaration of
Plaintiff (#49) p. 1. Plaintiff further alleges that while
being escorted defendant Wheeler "jammed his tazer in my neck
and choked me with my shirt collar," shoved plaintiff in the
elevator and "strangled" him by his shirt collar. Complaint
(#2) p. 3.

<u>Discussion:</u>   Defendant Russell is the Lincoln County jail
commander/manager. She has the "responsibility for the day-
to-day operation and management of the LCJ subject to the
direction of Lincoln County Sheriff Dennis Dotson."
Declaration of Jamie Russell (#30) p. 1. Plaintiff's only
allegations concerning defendants Russell and Wheeler are as
follows:

   Plaintiff alleges "[t]he actions of defendants Wheeler,
Russell and Dotson, allowing physical force against the
plaintiff without need or provocation constituted the tort of

4 - ORDER

assault and battery under the law of the United States."
Complaint (#2) p. 5.

Plaintiff further alleges: "The failure of defendants
Russell, Dotson to take disciplinary or other action to curb
the known assault of physical abuse of inmates by defendant
Wheeler constituted deliberate indifference, and contributed
to and proximately caused the above described violation of the
Eighth Amendment rights and assault and battery." (sic)  Id.
Plaintiff has not alleged any facts that would support a
finding that defendants Russell or Dotson had any knowledge of
alleged "physical abuse of inmates by defendant Wheeler."

Plaintiff apparently seeks to hold defendants Russell and
Dotson liable in their supervisory capacities. ["Lieutenant
Jamie Russell and Sheriff Dotson are liable they control the
facility and deputys." (sic)] Plaintiff's Memorandum of Law
(#36) p. 3.

It is well settled that respondeat superior is not a
proper basis for liability under 42 U.S.C. § 1983.  Monell v.
Dept. of Social Services of City of New York , 436 J.S. 658,
691-694 (1978); Rizzo v. Goode, 423 U.S. 362, 375-75 (1976);
Harris v Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997); Hansen
v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989); King v. Atiyeh,

5 - ORDER

814 F.2d 565, 568 (9th Cir. 1987). Absent an allegation that the named state officials were personally involved in the alleged deprivation of constitutional rights, a complaint under 42 U.S.C. § 1983 does not state a claim. See, Chuman v Wright, 76 F.3d 292, 294-95 (9 th Cir. 1996); Foddie v. Coughlin, 583 F. Supp. 352, 356 (S.D.N.Y. 1984); Tunnell v. Office of Public Defender, 583 F. Supp. 762, 767 (E.D. Pa. 1984); Black v. Delbello, 575 F. Supp. 28, 30 (S.D.N.Y. 1983); Knipp v. Winkle, 405 F. Supp. 782, 783 (N.D. Ohio 1974). A supervisor may be liable based on his or her personal involvement in the alleged deprivation, or if there is a sufficient causal connection between the supervisor's alleged wrongful conduct and the alleged deprivation, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989), but a "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989, citing Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984); Ortez v. Washington County. 88 F.3d 804, 809 (9th CIr. 1996); See also, Shaw v. Stroud. 13 F.3d 791, 799 (4th Cir. 1994) (supervisory liability only when a)

6 - ORDER

actual or constructive knowledge of a pervasive and
unreasonable risk of injury; b) deliberate indifference to or
tacit authorization of the practice; and c) an affirmative
causal link between inaction and the injury). Supervisory
officials may also be liable if they "implement a policy so
deficient that the policy `itself is a repudiation of
constitutional rights' and is `the moving force of the
constitutional violation.'" Redman v. County of San Diego, 924
F.2d 1435, 1446 (9th Cir. 1991), cert. denied, 112 S. Ct. 972
(1992) (quoting Hansen v. Black, supra, 885 F.2d at 646, in
turn quoting Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir.
1987).

Plaintiff has not established any facts that would
subject defendants Russell or Dotson to liability under these
principles. There is no evidence in the record before the
court that defendant Russell or defendant Dotson either
personally participated in the alleged conduct giving rise to
plaintiff's claims or had any reason to know of a risk of harm
to plaintiff and were deliberately indifferent to such risk.

Plaintiff generally alleges a claim for "denial of
grievance system," Complaint (#2), p. 1. However, the
record reflects that plaintiff filed two grievances about

defendant Wheeler's alleged conduct within 24 hours of the November 20, 2007 incident. Plaintiff acknowledges that he received responses to those grievances. <u>See</u>, Declaration of Plaintiff / Statement of Facts (#49), p. 4.

Plaintiff alleges that "again on 11-23-07 I filed a third grievance ... claiming the same assault and battery that defendant Wheeler has comitted against my persons (sic). I got no response." <u>Id</u>. p. 4-5.

Attached to plaintiff's Reply (#48) as Exhibit A page 3 of 3" is a copy of what might be the third grievance. The copy is illegible and it is not possible to determine who it is addressed to.

Defendants exhibits do not reference any such third grievance. However, defendants have not specifically disputed this factual allegation. However, I find that this possible disputed fact is not material to the resolution of plaintiff's claim.

Plaintiff's "denial of grievance system" claim is apparently premised on the fact that he did not receive a response to the alleged third duplicate grievance concerning the conduct of defendant Wheeler.

However, as discussed below, plaintiff did not appeal or

8 - ORDER

pursue the initial grievances he filed concerning the incident. Moreover, the third grievance was not filed within 24 hours of the incident as required by the grievance procedure (discussed below).

I find that under these circumstances, defendants' failure to respond to a third duplicate grievance fails to state a due process claim for "denial of grievance system."

Plaintiff generally alleges a claim for "confinement in segregation in violation of due process clause," Complaint (#2), p. 1. However, plaintiff stated in his deposition that his reclassification, loss of privileges, and confinement in segregation are not part of this lawsuit. See, Declaration of Bruce Mowery (#29), p. 11-12. Therefore, if plaintiff intended to allege a due process claim arising out of his confinement in segregation, he apparently abandoned the claim.

Plaintiff's claim for "disrespect in violation of the Eighth Amendment" is apparently premised on the allegation that defendant Wheeler called him "pathetic."

Plaintiff was a pre-trial detainee while incarcerated at the LCJ. Therefore, his claims are governed by the Due Process Clause rather than the Eight Amendment. See, Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996); Berg v. Kincheloe,

9 - ORDER

794 F.2d 457, 459 (9th Cir. 1986).

In any event, plaintiff's allegation that defendant Wheeler insulted him fails to state a claim cognizable under 42 U.S.C. § 1983. See, Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987); Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997); Hoptowit v. Ray, 682 F.2d 1237, 1252 (9th Cir. 1982); Gant v. Sunn, 810 F.2d 923, 925 (9 th Cir. 1987); Hopson v. Fredericksen, 961 F.2d 1374 (8th Cir. 1992).

Plaintiff's principal claim is that defendant Wheeler violated his constitutional rights by using excessive force during the incident. As noted above, plaintiff and defendant Wheeler describe the November 20, 2007, incident very differently. However, every disputed factual issue is not "material" and if the resolution of a factual dispute would not effect the outcome of the claim, summary judgment may be proper. Arpin v. Santa Clara Valley Transp. Agency, 531 F.3d 912, 919 (9th Cir. 2001); see also, Nidds v. Shindler Elevator Corp., 113 912, 916 (9th Cir. 1996).

In this case it is not necessary to resolve the factual disputes or determine whether or not such disputes create "genuine issues of material fact" because plaintiff did not exhaust administrative remedies with respect to his claims.

10 - ORDER

The Prison Litigation Reform Act (PLRA) provides: No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a); <u>Porter v. Nussle</u>, 534 U.S. 516, 531-32; <u>Booth v. Churner</u>, 532 U.S. 731 (2001). In the Ninth Circuit, inmates are required to exhaust all grievance remedies prior to filing a 1983 action, including appealing the grievance decision to the highest level within the grievance system. <u>Bennet v. King</u>, 293 F.3d 1096, 1098 (9th Cir. 2002); <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199 (9th Cir. 2002). Proper exhaustion requires compliance with the institution's deadlines and other procedural rules. <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006).

The LCJ Inmate Handbook includes a detailed explanation of the institution grievance procedure. <u>See</u> Declaration of Jamie Russell (#30), p. 2. Ms. Russell states that all inmates are informed of the rules and procedures set forth in the Inmate Handbook and specifically that plaintiff has been an inmate at the jail on various occasions in prior years and that he "was well acquainted with the kyte/grievance

procedure." Declaration of Jamie Russell (#30), p. 4. At his

deposition, plaintiff acknowledged that he was familiar with

the "kyte/grievance" procedure. Declaration of Bruce Mowery

(#29) p. 9-10.

The Inmate Handbook sets forth the grievance steps as

follows:

Step I:  Write a request to the staff person whose
actions you are filing the grievance against.  If your
grievance is not resolved, go to Step II;

Step II: Write a request form to the shift supervisor
stating your grievance.  Include the name of the deputy who
already answered the grievance.  If the grievance is not
resolved, go to Step III;

Step III: Write a request form to the jail manager by
following the same procedure you did with the shift
supervisor.  If the grievance is not resolved, go to Step IV.

Step IV:  Write a request form to the Sheriff by
following the same procedure as you did with the jail manager.
The Sheriff's decision will be final.

Declaration of Jamie Russell (#30), p. 2-3.

Inmates have 24 hours from the time of an incident to

file a grievance and 24 hours from each time a grievance is

denied to file the next step.  Declaration of Jamie Russell

(#30), p. 2.

The incident involving plaintiff and defendant Wheeler

occurred on the evening of November 20, 2007.  Plaintiff

submitted a grievance dated November 20, 2007, to an unidentified "Deput." (sic). Plaintiff stated in the grievance that defendant Wheeler "used excessive force and assaulted and tazed me because he was angry." On November 21, 2007, Sergeant Kellenberger responded "[n]o excessive force found. Byers failed to comply with Deputy directive and appeared hostile." Declaration of Jamie Russell (#30) Exhibit A.

Also on November 20, 2007, plaintiff submitted a second grievance to an unidentified "Deputy" alleging that defendant Wheeler had disrespected him by calling him "pathetic." The second grievance also mentioned that plaintiff was "tazed and assaulted" and that "Corperole Wheeler strangled me with my shirt." (sic) On November 21 Sergeant Kellenberger responded "see previous." Declaration of Jamie Russell (#30) Exhibit B.

Neither of the grievances plaintiff filed were addressed to defendant Wheeler as required by Step I of the grievance procedure. Plaintiff did not proceed to Step II as to either of the two grievances.[2]

_____

[2]The second grievance cannot be considered as Step II of the initial grievance, because at the time plaintiff filed the second grievance, he had not received a response to the first. Moreover, the second grievance was not addressed to the shift supervisor and

As noted above, plaintiff alleges in his Statement of Facts (#49) at pages 4-5 that on November 23, 2007, he filed a third grievance "claiming the same assault and battery" by defendant Wheeler, and submitted an illegible copy of the third grievance as "Exhibit A - p. 3 of 3."

However, if plaintiff filed a third grievance concerning the November 20, 2007, incident on November 23, 2007, and if the third grievance was submitted to defendant Wheeler as required by the grievance procedure, the grievance was not filed within 24 hours of the incident as required by Step I of the grievance procedure and was therefore not proper.

Plaintiff contends that he did follow the grievance procedure and implies that he was unable to complete the grievance process because he was moved to a different facility. Declaration of Leonard W. Byers (#37) p. 2. However, plaintiff states that he was transferred on December 13, 2003, which I note is 23 days after the November 20, 2007, incident. Declaration of Plaintiff (#49), p. 5. I find that plaintiff had ample opportunity to pursue the grievance procedure before he was transferred out of the facility.

_____

did not include the name of the deputy who responded to the previous grievance.

14 - ORDER

Based on the foregoing, I find that plaintiff did not
exhaust his administrative remedies with respect to his claim
that defendant Wheeler used excessive force against him on
November 20, 2007.  Accordingly, that claim is not properly
before this court and fails as a matter of law.

Plaintiff generally alleges "the torts of assault and
battery and negligence."  Complaint (#2) p. 1.  Plaintiff has
not specifically alleged facts that would support the elements
of such claims or that he complied with the requirements of
the Oregon Tort Claims Act.  However, to the extent that
plaintiff's complaint can be construed as alleging claims for
assault and battery and/or negligence, those claims are
dismissed.

If the federal claim giving rise to the court's
jurisdiction is dismissed before trial, supplemental state law
claims may be dismissed as well.  28 U.S.C. § 1357(c)(3).
Indeed some cases hold that the proper exercise of discretion
*requires* dismissal of state law claims unless "extraordinary
circumstances" justify their retention.  Wren v. Sletten Const.
Co., 654 F.2d 529, 536 (9th Cir. 1991); Wentzka v. Gellman, 991
F.2d 423, 425 (7th Cir. 1993).  However, most courts hold that
whether to dismiss supplemental claims is fully discretionary

with the district court. Schneider v. TRW, Inc., 938 F.2d 986,
993-994 (9th Cir. 1991), weighing factors such as economy,
convenience, fairness and comity. Brady v. Brown, 51 F.3d 810
(9th Cir. 1995).

In this case I find that there are no relevant factors to
justify this court's retention of jurisdiction over
plaintiff's possible state tort claims. Accordingly, any such
claims are dismissed.

Summary: Based on all of the foregoing, I find that there are
no genuine issues of material fact remaining in this case and
that defendants are entitled to judgment as a matter of law.
Defendant's Motion for Summary Judgment (#27) is allowed.
Plaintiff's 42 U.S.C. § 1983 claims are dismissed with
prejudice. Plaintiff's ancillary state tort claims, if any,
are dismissed without prejudice. Plaintiff's Motion for
Summary Judgment (#35) is denied. Defendants' Motion to
Strike (#52) is denied.

This action is dismissed.

IT IS SO ORDERED

DATED this 13th day of March, 2009.

Michael R. Hogan
United States District Judge

16 - ORDER